RANDS, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74942.   Promulgated October 15, 1936.

*Raymond H. Berry, Esq., Ralph W. Barbier, Esq.,* and *Thomas O. Marlar, Esq.,* for the petitioner.

*DeWitt M. Evans, Esq.,* and *Leonard C. Mitchell, Esq.,* for the respondent.

**OPINION.**

STERNHAGEN: ■ The Commissioner determined for each of the years 1927, 1928, 1929, and 1930:

\* \* \* that you have incurred liability under the provisions of section 220 of the Revenue Act of 1926 and section 104 of the Revenue Act of 1928.[1] The fact that your company is a mere holding or investment company and has permitted your gains and profits to accumulate beyond the reasonable needs of the business instead of being distributed, is construed as prima facie evidence of a purpose to prevent the imposition of the surtax upon your stockholders. Accordingly, you are subject to a tax equal to 50 per cent of your net income as defined in section 220 (d) of the Revenue Act of 1926 and section 104 (c) of the Revenue Act of 1928.

The petitioner assails this determination.

---

[1] SEC. 104. ACCUMULATION OF SURPLUS TO EVADE SURTAXES.

(a) If any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof, which shall be in addition to the tax imposed by section 13 and shall be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax.

(b) The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax.

(c) As used in this section the term "net income" means the net income as defined in section 21, increased by the sum of the amount of the dividend deduction allowed under section 23 (p) and the amount of the interest on obligations of the United States issued after September 1, 1917, which would be subject to tax in whole or in part in the hands of an individual owner.

\*        \*        \*        \*        \*        \*        \*

The general purpose and scope of the statutory provision have been considered in previous decisions, *United Business Corporation of America* v. *Commissioner*, 62 Fed. (2d) 754; *R. & L., Inc.* v. *Commissioner*, 84 Fed. (2d) 721; *United States* v. *Tway Coal Sales Co.*, 75 Fed. (2d) 336; *Keck Investment Co.* v. *Commissioner*, 77 Fed. (2d) 244, affirming 29 B. T. A. 143; *Saenger, Inc.* v. *Commissioner*, 84 Fed. (2d) 23, and that ground need not be gone over again. The existence of some or all of the conditions requiring the additional tax is a question of fact. If from the evidence it appears that the facts set forth in subdivision (a) exist, the 50 percent tax is levied; and if the facts of subdivision (b) exist there is a pre-- sumption which supports the 50 percent tax unless overcome. The essential question always is whether the corporation was formed or availed of to relieve the shareholders from surtax. When the Commissioner determines a deficiency under this section of the statute, the taxpayer can only succeed by affirmatively proving that this is not so.

In our opinion, the evidence supports the Commissioner's determination. Although Rands testified categorically that in forming the corporation he had no thought of taxes, we find it impossible in view of the remaining evidence to let this oral testimony of the most interested witness control the judgment. Cf. *Edward G. Swartz, Inc.*, 33 B. T. A. 355. Rands had accumulated a fortune, the income from which placed him in the high surtax brackets. He would be more naive than he appeared to be on the witness stand if he were unmindful of his heavy taxes. To provide an occupation for his son and to give himself something to do are not motives which necessarily compel the organization of a corporation and the transfer to it of securities worth $1,500,000, comprising one-third of his estate. Such motives are not inconsistent with a tax-saving purpose.

But the statute is not dependent alone upon the purpose of the forming of the corporation, being equally applicable if the corporation after its formation is availed of for such purpose. As to this, there can be little doubt. To it, Rands, substantially its sole shareholder, transferred large amounts of his personal funds each year as loans without interest. If these amounts had been employed by Rands in normal use or investment they would have yielded to him substantial amounts of income taxable to him. By lending these amounts to his controlled corporation without interest such income inured to the corporation and was taxable at the fixed corporation rate. Because the corporation made no distribution, Rands escaped the surtax entirely. This we should think was exactly the scheme which has ever since the Revenue Act of 1913 been aimed at by

Congress. And in this instance we think the statute has not missed the mark.

The petitioner's counsel, with ability, devote much of their evidence and argument to interesting questions as to the legal meaning of the terms of the section—"holding company", "investment company", "mere", "reasonable needs of the business." But this case is too patently within the obvious intendment of the statute to permit such dialectical treatment. The term "holding company" does not exclude one which actively deals with the funds contributed by its principal and almost sole shareholder, instead of being a passive repository or "holder" of the funds or assets. Cf. *Keck Investment Co.* v. *Commissioner, supra; R. & L., Inc.* v. *Commissioner, supra.* An investment company is not to be defined as one restricted to long term investments for regular income and excluding one which trades in the market and buys and sells speculative stocks or real estate. The reasonable needs of the business are not to be regarded as controlled by the judgment of a stock trader, or even of a student of the market, as to the amount necessary to survive a sudden drop in the market or to take advantage of a rise. If there is difficulty, as petitioner suggests, in formulating a concept for the reasonable needs of the business for such a corporation as this, it does not help the petitioner and does not require that a definition be made which will fit such corporations as a class. Cf. *Williams Investment Co.* v. *United States,* 3 Fed. Supp. 225; *R. & L., Inc.* v. *Commissioner, supra; Saenger, Inc.* v. *Commissioner, supra; Wm. C. deMille Productions, Inc.,* 30 B. T. A. 826 (on review C. C. A., 9th Cir.) ; *Cecil B. deMille,* 31 B. T. A. 1161 (on review C. C. A., 9th Cir.) ; *Edward G. Swartz, Inc., supra.* Here subdivision (b) needs no consideration at all, since it appears clearly enough that the crucial subdivision (a) is applicable. This, in our opinion, is no less true as to 1929 and 1930 than as to 1927 and 1928, notwithstanding that the diminution in value of petitioner's asset securities wiped out surplus. The corporation had taxable income, which but for its intervention would have been taxable to Rands, and it continued to be the instrumentality which enabled him to escape surtax. *Saenger, Inc.* v. *Commissioner, supra; R. & L., Inc.* v. *Commissioner, supra.*

The point is made that the provision is unconstitutional, but prior decisions have upheld it. *United Business Corporation of America* v. *Commissioner, supra; Williams Investment Co.* v. *United States, supra; Saenger, Inc.* v. *Commissioner, supra; R. & L, Inc.* v. *Commissioner, supra.*

The Commissioner's determination that section 220 and section 104 are applicable is sustained.

■ In 1927 petitioner received $390,000 in redemption of debenture notes of Motor Products Corporation and in 1929 it received

$157,920 in redemption of some of the preferred shares of that corporation. The controversy is as to how much of these amounts is taxable gain, and the parties are agreed that this question is narrowed down to whether the original basic figure to be used is the value of Motor Products Corporation shares in 1916, as the Commissioner has held, or of the Rands Manufacturing shares on March 1, 1913, as petitioner claims. Both of these figures of value have been stipulated, and it must now be decided as a matter of law, which one should be used in the computation of gain. It is not necessary, and would only be confusing, to restate the intermediate facts as to changes in organization between the consolidation of May 1916 when Rands, the individual, first received the old Motor Products shares, and 1925, when this petitioner acquired the new Motor Products shares from Rands in a transaction which gave it his basis for gain or loss. In other words, the problem is to be treated as if in the tax years 1927 and 1929 this petitioner had sold the old Motor Products shares, received in 1916 in exchange for the Rands Manufacturing Co. shares, which it had acquired before March 1, 1913, at a cost of $25,000, and which on that date were worth $1,669,597.97 and which in the consolidation of 1916 were exchanged for Motor Products shares and cash aggregating $1,184,193.60.

By the consolidation of 1916, the Rands Manufacturing shares were turned in for cash and property amounting in the aggregate ($1,184,193.60) to more than original pre-1913 cost ($25,000) and to less than March 1, 1913, value ($1,669,597.97). There was, therefore, no deductible loss or taxable gain at that time. *United States* v. *Flannery*, 268 U. S. 98; *Ludington* v. *McCaughn*, 268 U. S. 106; *Goodrich* v. *Edwards*, 255 U. S. 527; *Walsh* v. *Brewster*, 255 U. S. 536.

The determination of gain or loss in 1927 and 1929 is governed, as to the redemption of debentures in 1927, by the provisions of the Revenue Act of 1926, and, as to the redemption of shares in 1929, by the Revenue Act of 1928. The applicable provisions of both acts are identical and are projections of similar provisions of the Revenue Act of 1924. Those of the 1926 Act are set forth in the margin.[2]

---

[2] SEC. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*     \*     \*     \*     \*     \*     \*

(6) If the property was acquired upon an exchange described in subdivision (b), (d), (e), or (f) of section 203, the basis shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. If the property so acquired consisted in part of the type of property permitted by paragraph (1), (2), (3), or (4) of subdivision (b) of section 203 to be received without the recognition of gain or loss, and in part of other property, the basis provided in this paragraph shall be allocated between the properties (other than money) received, and for the purpose of the allocation there shall be assigned to such other property an

From them it will be seen that the consolidation of 1916 was what the 1926 Act called a reorganization, and that the exchange by Rands of his shares in Rands Manufacturing Co. for shares of the newly consolidated Motor Products Corporation was an exchange in a statutory reorganization whereby Rands received property and cash. This is squarely within section 204 (a) (6). In other words, the Motor Products Corporation shares were acquired upon an exchange in a statutory reorganization. Gain or loss was, under the statute in force at that time, as construed by the decisions of the Supreme Court, not properly to be recognized, and therefore the basis of the Motor Products shares thus received must, by section 204 (a) (6), be taken as the same as the basis of the Rands Manufacturing Co. shares exchanged for them. Colloquially speaking, there was not in 1916 what the Commissioner calls a "closed transaction." Under these circumstances, the basis to be used antedates the consolidation of 1916 and becomes either the original cost of the Rands Manufacturing Co. stock or its March 1, 1913, value, whichever is higher, and this is the $1,669,597.97 stipulated as the value on March 1, 1913. There is no substantial distinction between the problem in this proceeding and those considered in *Securities Co.* v. *Commissioner*, 64 Fed. (2d) 330, and *Philip D. C. Ball*, 27 B. T. A. 388, 397, and those decisions are authority to sustain the petitioner's contention and reverse the Commissioner's determination.

3. The petitioner assails the respondent's disallowance of a deduction of $289,480 as the aggregate of losses sustained upon the seven transactions set forth in the findings. Explaining his disallowance, the respondent, in the notice of deficiency, said:

On the return a loss of $289,480 was claimed on the transfer of several blocks of stock to Mr. W. C. Rands, Sr. This loss has been disallowed on the ground that there was not an actual sale, as explained in the beginning of this statement.

The earlier explanatory statement is as follows:

* * * There was no cash involved in these transfers and the entries on the books of the corporation consisted simply of debits to the account of Mr.

---

amount equivalent to its fair market value at the date of the exchange. This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it;

\* \* \* \* \* \* \*

SEC. 203. (b) (2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(f) If an exchange would be within the provisions of paragraph (1), (2), (3), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized.

\* \* \* \* \* \* \*

Rands and to losses on common stocks and credits to the assets transferred. In view of the circumstances and inasmuch as Mr. Rands is the sole stockholder of the corporation, it is held that this transfer does not constitute an ordinary sale, and therefore the loss of $289,480 has been disallowed.

The evidence, in our opinion, establishes that in fact the sales, with the resulting losses, occurred, and findings to this effect have been made. It follows as a matter of law that the petitioner is entitled to the deduction claimed and that the Commissioner incorrectly disallowed it.

Although there is no dispute as to the facts in evidence, the respondent contends that the transactions can not be recognized as sales because of the following circumstances: They were actuated by a purpose to reduce income taxes, they were transactions between a "one man corporation and its sole stockholder", the certificates were at all times in the name of Rands, no Federal transfer tax was paid at the time or until several years later, and the transfers were not by actual delivery, but by mere bookkeeping entries. In our opinion, none of these circumstances separately or collectively serves to prevent recognition of the sales. The separate existence of Rands and the corporation must be respected not only as a general precept, *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415; *Jones* v. *Helvering*, 71 Fed. (2d) 214, but because this is the only view which is consistent with the application of section 104 and the levy of the 50 percent tax upon the corporation. It could not in the same determination be said that Rands had availed himself of a corporation to save surtaxes, but that sales to the corporation are sham because it is his creature and may not be recognized. While such a circumstance invites suspicion and requires strict adherence to the legal requisites of a sale, it does not vitiate a sale otherwise complete. *Commissioner* v. *McCreery*, 83 Fed. (2d) 817. So long as the taxpayer hews to the line, the sale must be respected. If the corporation had reacquired the shares or had sold them at other than a fair price or had not taken the usual steps to account for the transfer either upon its own books or in the records of the safekeeping department of the bank, there would have been less foundation for the recognition of a sale than there was. But these supporting circumstances are beyond dispute. The purpose to save income taxes is now legally above reproach, and will not serve to stamp the transaction as other than a sale, *Gregory* v. *Helvering*, 293 U. S. 465; *Jones* v. *Helvering*, *supra*. This is likewise true of the circumstance that the shares were held in Rands' name. This is not uncommon in respect of shares owned by a corporation where trading on the market is frequent and corporate action is cumbersome and inconvenient. The failure of the corporation to pay the transfer tax contemporaneously with the sales tends slightly to support the Commissioner's view, but can not be regarded as con-

trolling or sufficient to weigh down the scale. In view of the undisputed fact that Rands individually was a heavy creditor of the corporation, it is not significant that the consideration for the transfer was a credit against this indebtedness of which appropriate entries were within the year made upon the books of account, *William H. Albers*, 33 B. T. A. 373 (C. C. A., 6th Cir., dismissed June 30, 1936).

*Shoenberg* v. *Commissioner*, 77 Fed. (2d) 446, is cited by the respondent to support the nonrecognition of the sale. In that case, however, there were circumstances including the reacquisition of the shares by the taxpayer which demonstrated the unreality of the sale and of the taxpayer's alleged intent to dispose of the property.

The respondent's disallowance of the deduction is reversed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

BLACK concurs only in the result.

---

VAN FOSSAN, dissenting: In my opinion the record in this case does not support a finding that petitioner corporation was either formed or availed of for the purpose of preventing the imposition of the surtax on the stockholders. For this reason I dissent from the majority conclusion as to this issue.

